CIVIL RIGHTS COMMISSION

STATE OF HAWAII

'96 JUN 28 P12:40

| | |
|---|---|
| LINDA C. TSEU, Executive Director, on behalf of the complaint filed by SUSAN C. COLLINS, <br><br> v. <br><br> CEDERQUIST, INC., and ANDRES CORPUZ, <br><br> Respondents. | Docket No. 95-001-E-R-S <br><br> FINAL DECISION AND ORDER |

## FINAL DECISION AND ORDER

The Hearings Examiner's Proposed Findings of Fact, Conclusions of Law, and Recommended Decision ("Recommended Decision") were filed on March 13, 1996. The Executive Director filed Written Exceptions on April 12, 1996, requested oral argument, but did not file a Statement in Support. Cederquist, Inc. ("Cederquist"), Respondent, filed "Objections" on April 12, 1996. Andres Corpuz ("Corpuz"), Respondent, filed Written Exceptions on April 12, 1996, requested oral argument, and filed a Statement in Support on April 26, 1996.

Oral argument was held on May 28, 1996, 2:00 p.m. before Commissioners Amefil Agbayani, Richard Port, Jack Law, Faye Kennedy, and William Hoshijo. Karl K. Sakamoto, Esq., appeared on behalf of the Executive Director[1]. Meyer M. Ueoka, Esq., appeared

---

[1] The Commission through the Executive Director is required to provide counsel on behalf of the complaint. H.R.S. § 368-14(a). At administrative hearings where the complainant has not intervened as a party, the party bringing the action is the Executive Director, on behalf of the complaint.

EXHIBIT "8"

on behalf of Corpuz, who was present. Cederquist was sent notice of the hearing but did not appear or contact the Commission. Also present were Linda C. Tseu, Executive Director, and Susan C. Collins ("Collins"), Complainant.

I.  FINDINGS OF FACT

Based upon the exceptions, oral argument, and review of the record, the Commission makes the following changes: Finding of Fact ("Finding") 1 (second sentence) is modified to change the year that Collins joined the Union as "1986" instead of "1987." Finding 5 (first sentence) is modified as follows: "Complainant was assigned to work with Corpuz for about a month at the airport job." Finding 8 (first sentence) is modified as follows: "On September 3, 1986, Respondent Cederquist was authorized to do business in Hawaii as a foreign corporation." Finding 35 (first sentence) is modified to change the year that the crew's use of profanity stopped as "1990" instead of "1995." The remaining portions of the above Findings are not changed.

Findings 19 and 21 set forth the conduct by Corpuz and the crew toward Collins. The Hearings Examiner had the opportunity to hear the testimony and observe the demeanor of the witnesses, determine credibility, and weigh the evidence. Based upon the exceptions, oral argument, and review of the record, the Commission determines that Findings 19 and 21 are supported by the record, and no convincing reasons were provided for not adopting them. The Commission hereby adopts the Proposed Findings of Fact in their

2

entirety with the above modifications and incorporates them in this Decision.

The Commission also takes notice of the calendars for the years 1990 and 1991 submitted by Corpuz in its Motion to Take Judicial Notice of 1990 and 1991 Calendars, filed on April 15, 1996. H.R.S. § 91-10(4).

II. THE CONDUCT OF THE CREW

Collins was an apprentice carpenter. As the only female employee at the work site, she worked with as many as thirteen (13) males. Finding 29. Her experience in this case reflects some of the obstacles and barriers that a female faces when working in a traditionally male-dominated industry.

On July 26, 1991, Cederquist submitted a Response, Exh. 3, to Collins' complaint of discrimination filed on June 25, 1991. It acknowledged that Collins had complained to Don Ternberg, Cederquist's job superintendent, about the verbal abuse and foul language and reported the harassment twice, and that Ternberg spoke to Corpuz and another employee about it. Finding 21 states the most of the crew used profanities "when they spoke to [Collins]" and often talked about sex and told jokes about sex. Cederquist contends that "[a] reasonable male could also find the language offensive" but because it was not directed at Collins there should be no liability for the acts of the crew. Objections, at 2. A similar justification is given for Teresito Cabridilla's statements about going home and making babies. Id.

3

Although profanity and sexual joking may be common at a work site, an employer must take steps to address the situation if an employee complains. Collins complained to Ternberg who told her that such speech was common at construction sites and that she should get used to it. Finding 26. He felt that her complaint was "minute" and "far out." Id. The profanity continued, and Collins had to complain to the union representative, Herman Nascimento, Finding 31, who spoke to Ternberg and the crew. Findings 32, 33, and 34. The profanity and sexual joking stopped after that. Finding 35.

The use of profanity and sexual joking can create an intimidating, hostile, and offensive work environment because of sex. Cederquist contends that because such language would also be offensive to a reasonable male it should not be held liable. Objections, at 2. However, it is sufficient that a reasonable victim, in this case a female, would find the language to be offensive for there to be harassment because of her sex. Steiner v. Showboat Operating Co., 25 F.3d 1459 (9th Cir. 1994) (similar conduct also directed at males does not excuse sexual harassment of female); cert. denied, 115 S.Ct. 733 (1994). Even though a reasonable male would also find the language offensive does not excuse its adverse impact upon Collins, especially in this case, because there is no evidence that any male ever complained about the profanity or sexual joking.

4

III. THE CONDUCT OF CORPUZ

Corpuz was the working foreman and overall supervisor of the carpenters employed by Cederquist. He served in a supervisory capacity over Collins, approved her hiring, and exercised control over her responsibilities. The Commission adopts Conclusion of Law ("Conclusion") A, 2 that Corpuz is an agent of Cederquist and is personally liable as an employer under H.R.S. § 378-1.

Corpuz constantly asked Collins to go drinking and to chicken fights with him[2]. He asked her out on her first day, but she refused and told him to stop asking. Finding 19a. Despite her request to stop asking, he bothered her by continuing to ask her to go drinking and to chicken fights with him. Finding 19d. In one instance, Corpuz slapped her on the butt as he was leaving the area. Finding 19b. In another instance, Corpuz offered her $100 to say "I love you" in Ilocano. Finding 19c.

The constant invitations annoyed Collins. She felt miffed and insulted. She tried to ignore them. She was upset and embarrassed when Corpuz slapped her on the butt and offered her money to say "I love you." Finding 20. The record contains much uncontradicted medical evidence about the effects upon Collins of the unwelcome conduct by Corpuz and the crew. Findings 44, 48, and 53.

IV. HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

H.R.S. § 378-2(1)(A) prohibits discrimination because of sex

---

[2] Previously when they worked together at the airport job, Corpuz asked Collins to go out to drinking and to go to chicken fights. Collins refused these invitations. Finding 6.

5

in the terms, conditions, and privileges of employment. Employees are entitled to work in an environment free from harassment on the basis of their sex. <u>Harris v. Forklift Systems, Inc.</u>, 114 S.Ct. 367 (1993). The Commission rules prohibit hostile work environment sexual harassment. H.A.R. § 12-46-109 provides:

> (a) Harassment on the basis of sex is a violation of chapter 378, HRS. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or visual forms of harassment of a sexual nature constitute sexual harassment when:
> . . .
> (3) That conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
> (b) In determining whether alleged conduct constitutes sexual harassment, the commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

Corpuz argues that the conduct complained about was not sexual in nature, as required under the rule, because it was not sexually suggestive. <u>Corpuz' Exceptions</u>, at 44. The Commission disagrees because the conduct was sexually suggestive. A male offering $100 to a female to say "I love you" is sexually suggestive. A male repeatedly asking a female to go out despite her refusal is sexually suggestive. A male slapping a female on the buttocks is sexually suggestive. The jokes about sex were sexually suggestive. The statements about making babies were sexually suggestive. Thus, the conduct was sexual in nature.

H.A.R. § 12-46-109(a)(3) prohibits conduct of a sexual nature which creates a hostile or offensive working environment because

6

such conduct constitutes sex discrimination in violation of H.R.S. § 378-2(1)(A). A hostile or offensive environment exists "[w]hen the work place is permeated with discriminatory intimidation, ridicule, and insult" so that the conditions of employment are altered or an abusive working environment is created. Harris, 114 S.Ct. at 370 (citation and internal quotation marks omitted.) Having a lone female carpenter at a work site with as many as 13 male carpenters creates a great potential for hostile work environment sexual harassment. Considering the record as a whole and looking at the totality of the circumstances, in particular the context of the incidents occurring in a male-dominated work environment, the Commission adopts the Conclusion B, 1, that the events occurred; Conclusion B, 2, that the conduct of the crew and Corpuz were unwelcome; and Conclusion B, 3, that a reasonable woman would consider such conduct sufficiently severe and pervasive to create a hostile and offensive work environment.

## V. CEDERQUIST'S RESPONSIBILITY FOR THE SEXUAL HARASSMENT

Cederquist did not have an express policy against sexual harassment. Finding 15. It did not train its supervisors and employees about sexual harassment. Id. Corpuz did not receive any training from Cederquist. Tr. at 246. Cederquist only had an informal grievance procedure whereby employees would discuss problems with their supervisors or management. Finding 15.

When Collins complained to Ternberg, he downplayed her complaints and took no action. He told her such speech was common

at construction sites and that she should get used to it. Finding 26. Cederquist did nothing to address her initial complaint. Collins then had to complain to Nascimento, who actively intervened on her behalf with Ternberg, Corpuz, and the crew. Nascimento's efforts made Ternberg take some action, including speaking to the crew and assigning Collins away from Corpuz. Findings 27-29, 30-35. Without the involvement of the union representative, it appears that Cederquist would not have taken any action at all.

H.A.R. § 12-46-109(g) provides:

> Prevention is the best tool for the elimination of sexual harassment. Employers should affirmatively raise the subject, express strong disapproval, develop appropriate sanctions, inform employees of their right to raise and how to raise the issue of sexual harassment, and take any other steps necessary to prevent sexual harassment from occurring.

Ternberg did not deal with Collins' initial complaint of sexual harassment. In essence, Cederquist did not take steps to prevent sexual harassment from occurring; and only minimal steps were taken after Collins' second complaint to prevent it from recurring. An employer, particularly one in a traditionally male-dominated industry, should educate its supervisors and employees about sexual harassment in order to prevent it from occurring. Upon receiving a complaint of sexual harassment, an employer must take immediate and effective corrective action. H.A.R. § 12-46-109(d).

VI. ORDER PROVIDING REMEDIES FOR SEXUAL HARASSMENT

The Commission adopts the Recommended Decision that Collins is entitled to a total of thirty thousand dollars ($30,000.00) in

compensatory damages from Cederquist for the sexual harassment. Cederquist, as the employer of Corpuz and the crew, is responsible and liable for their unlawful conduct. H.A.R. §§ 12-46-109(c) and (d). Cederquist failed to act upon Collins' complaints and did not take immediate and effective corrective action to prevent further sexual harassment from occurring. Doing nothing after the first complaint and only speaking to the crew and separating Collins from Corpuz after the second complaint were inadequate responses. <u>Intlekofer v. Turnage</u>, 973 F.2d 773 (9th Cir. 1993). Cederquist should have inquired or investigated to determine what actually happened and taken the necessary steps to address the problem. At a minimum, Cederquist should have interviewed Collins, Corpuz, and any witnesses and acted upon the results of the inquiry.

With respect to Corpuz' sexual harassment of Collins, the Commission finds that he is jointly and severally liable with Cederquist for three thousand dollars ($3,000.00) of the total of thirty thousand dollars ($30,000.00) in compensatory damages. (In other words, Corpuz must pay Collins up to $3,000.00 for his violation of the law, if Cederquist makes no payments.) Corpuz' conduct was egregious, reflective of a traditionally male-dominated work environment, and resulted, in part, from his lack of training on sexual harassment by Cederquist. Although lack of training is no defense, the Commission believes there were mitigating factors to impose greater liability upon Cederquist than Corpuz. In this case, Corpuz only touched Collins once in passing. There was no pattern of offensive physical contacts. The remaining conduct was

9

verbal. The "I love you" request only happened once. The constant requests to go out annoyed Collins. Recommended Decision, at 26. Corpuz did not participate in the crew's profanity or sexual joking. The Commission hereby modifies the compensatory damages awarded against Corpuz.

The other recommendations for relief in the Recommended Decision are adopted by the Commission. Cederquist and Corpuz must have the Notice in the Recommended Decision published, and Cederquist is ordered to cease and desist from discriminating and to develop a non-discrimination policy. The Commission adopts the remaining Conclusions of Law and incorporates them in this Decision.

DATED: Honolulu, Hawaii  June 28, 1996

Amefil Agbayani, Chairperson

William Hoshijo, Commissioner

Faye Kennedy, Commissioner

Jack Law, Commissioner

*Richard Port*
Richard Port, Commissioner

Notice: Under H.R.S. § 91-14(b), an aggrieved person may file a proceeding for review in the circuit court within thirty days of the service of the certified copy of the final decision.