CIVIL RIGHTS COMMISSION

STATE OF HAWAII

| | |
|---|---|
| In the Matter of | )   Docket No. 94-001-E-P |
| YVETTE SHAW, | )   FINAL DECISION AND ORDER |
|     Complainant, | ) |
| - -- - - - - - - - - - - - | ) |
| SAM TEAGUE, LTD. dba PAGE | ) |
| HAWAII and SAM TEAGUE, | ) |
|     Respondents. | ) |

'95 MAR -3 P1:11

## FINAL DECISION

    This case involves a claim of sex discrimination in employment, in particular, the termination, denial of maternity leave, and refusal to reinstate an employee who was pregnant. Complainant Yvette Shaw ("Complainant"), who was pregnant, sought leave to give birth and was terminated. When she was able to return to work, she was not reinstated despite the fact that her position was open.

    On February 1, 1995, at 11:30 a.m., Commissioners Amefil Agbayani, Daphne Barbee-Wooten, Jack Law, and Richard Port heard oral argument in the above-entitled case. Commissioner Josephine Epstein did not participate in the decision. Present were Anne Randolph, Esq., representing the Executive Director, and Dennis W. King, Esq., representing Respondents Sam Teague, Inc., dba Page Hawaii, and Sam Teague, as an individual (collectively "Respondents"). Also were present were Linda C. Tseu, Executive Director, and Sam Teague, Respondent ("Teague").

I hereby certify that this is a true and correct copy of the original on file at the HAWAII CIVIL RIGHTS COMMISSION.

CHIEF COUNSEL

EXHIBIT "9"

The Hearings Examiner's Findings of Fact, Conclusions of Law, and Recommended Order ("Recommended Decision") was filed on November 18, 1994.  Both parties filed timely Exceptions to the Recommended Decision and requested an opportunity to present oral argument.  Respondents filed an Errata Sheet to their Exceptions and a Reply to the Executive Director's Exceptions.  The Executive Director filed a Motion to Strike Respondents' Reply and Respondents filed a Memorandum in Opposition.  The Commissioners have reviewed the record, read the briefs of the parties, and heard oral argument.

I.

## MOTION TO STRIKE

The Executive Director has moved to strike Respondents' Reply because it allegedly contains additional exceptions, which should have been filed earlier, and also responds to the Executive Director's Exceptions.  The rules provide that a party may file a Statement in Support of the Recommended Decision within fifteen days after receipt of an opponent's Exceptions.  Hawaii Administrative Rules ("H.A.R.") § 12-46-54.  The Reply contains arguments which support parts of the Recommended Decision to which the Executive Director took exception.  A Statement in Support narrows the issues and assists the Commission in its decision making.  Respondents' Reply is essentially a Statement in Support. Thus, the Motion to Strike is denied.

II.

FINDINGS OF FACT

Respondents take Exception to Findings of Fact No. ("Finding") 12-14, and 21 and Conclusion of Law B.4 which found that Complainant did not lie when she made a one year commitment to work.  They contend that a reasonable person should have known that a one year commitment meant twelve consecutive months of work with no time off for any leave of absence.   They further contend that Complainant lied when she made the commitment because she knew that she was pregnant and did not inform Teague of that fact at her interview.

At the time of the interview in January 1992, Complainant believed that she would be able to work until 1995.  Her husband is in the military and stationed in Hawaii until 1995.   Thus, Complainant felt that she could make a commitment to work for one year[1] because she would be in Hawaii for a longer period.  She did not know that by a one year commitment Respondents meant twelve consecutive months without any possibility of leave.

Respondents' prior employees had difficulty staying for twelve consecutive months.   Three of the four previous office managers had left after working less than a year.   Finding 4. Respondents wanted an employee who could stay for a continuous period of time and not take any leave.  The record reflects that

_____

[1]Complainant's intent to return to work after giving birth is consistent with her understanding of a one year commitment.  This intent was stated to Teague on several occasions.  Finding 19, 21, 24, 35, and 38.

Respondents' request for a one year commitment did not clearly convey the continuous nature of the work and the impossibility of any leave.  Respondents seek to place the burden upon Complainant to ask for clarification about the one year commitment.  There is a significant difference between a general request for a one year commitment to work and a specific request for a commitment to work for twelve consecutive months without the possibility of taking leave for any reason whatsoever.  Given the importance of having an employee who would not need to take any leave during the year, Respondents should have made their requirements clear in the interview.

A lie is defined as an intentional statement of an untruth designed to mislead another.  Black's Law Dictionary, 6th Ed. (1990).  A reasonable person would not understand that a one year commitment meant twelve consecutive months without the possibility of any leave.  There are various laws which provide leaves of absence to employees.  Workers' compensation, Chapter 386, and temporary disability insurance (TDI), Chapter 393, provide leaves for on-the-job and off-the-job injuries, respectively.  H.A.R. § 12-46-108 requires that an employer provide reasonable leave for pregnancy, childbirth, or related medical conditions, with or without pay.  A prospective employee cannot be required to waive his or her right to take leave provided by law as a condition of accepting a job.

Respondents contend that Complainant was required to disclose her pregnancy because of her knowledge of this fact at the

4

time of her interview with Teague.    The record reflects that Respondents did not ask Complainant whether she was pregnant. H.R.S.  § 378-2(1)(C)  provides "[i]t shall be an unlawful discriminatory practice [b]ecause of . . . sex . . . [f]or any employer . . . to make any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification, or discrimination."  In other words, an employer cannot ask a prospective employee if she is pregnant.    As a corollary, a prospective employee is not required to disclose her pregnancy.    Complainant did not make an intentional statement of untruth designed to mislead Respondents by not disclosing she was pregnant.    Thus, Complainant did not lie when she agreed to make a one year commitment despite knowing of her pregnancy[2] or lie when she did not disclose her pregnancy.

The Commission hereby adopts the Proposed Findings of Fact, in its entirety, with the exception of Finding 44, which is modified in accordance with this decision.    See, Part III, D, infra.

### III.

### CONCLUSIONS OF LAW

A.    JURISDICTION

The Commission hereby adopts Conclusions of Law A, 1 and

---

[2]A job applicant would not be required to disclose her pregnancy if an employer, seeking a continuous one year commitment without the possibility of any leave, asked if there was any thing that would prevent her from meeting that commitment.    Such a question would indirectly indicate a specification, limitation, or discrimination based upon sex and would be prohibited by H.R.S. § 378-2(1)(C).

2 regarding the Commission's jurisdiction over the Respondents.

    B.    <u>PREGNANCY DISCRIMINATION</u>

        1.    <u>DISPARATE IMPACT CLAIM</u>

        "Fundamentally, pregnancy is a neither a disability nor a dysfunction, but a normal moment in the human reproductive process specific to women.  . . .  Leave policies that define normal conditions of employment in terms which are inadequate to accommodate pregnancy define pregnancy as incompatible with employment."  Reva B. Siegel, <u>Comment: Employment Discrimination Under the Pregnancy Discrimination Act of 1978</u>, 94 Yale L.J. 920, 942 (1985) (footnote omitted).  The inclusion of "pregnancy, childbirth, or related medical conditions" in the definition of "because of sex" in H.R.S. § 378-1 means that the prohibition against sex discrimination in employment requires careful scrutiny of policies which impact upon a woman's ability to participate in the workforce and have a family.

        In the past, discrimination against pregnant women has taken many forms.  Such discriminatory practices have included: reversal of a decision to hire upon notice of pregnancy; immediate termination upon notice of pregnancy; conditioning eligibility for maternity leave upon years of service; requiring unpaid maternity leave at the immediate onset of pregnancy; reinstatement only after a fixed period of time unrelated to medical clearance; denial of fringe benefits during maternity leave; and loss of seniority.  <u>Id</u>. at 932, n.16.  Today most pregnant women do not face such blatant discriminatory policies; however, there still may be other policies

which disadvantage them.

By its very nature, "pregnancy, childbirth, and related medical conditions" require that a female employee take some leave from work. By taking such leave, a pregnant woman should not be penalized or disadvantaged. After a medically reasonable period of time, a woman should be allowed to return to her job. These minimum protections should be part of any prohibition against discriminatory practices because of "pregnancy, childbirth, and related medical conditions."

The Recommended Decision concluded that Respondents' "no leave" policy had a disparate impact upon women and was not justified by business necessity. The key point was the Hearings Examiner's conclusion that during the period of Complainant's maternity leave, Teague would have had to spend the same amount of time working with and training an inexperienced temporary worker or working with and training an inexperienced permanent replacement employee. Recommended Decision at 19. In other words, operating the business with a temporary employee (and keeping the position open for Complainant) would have imposed the same burden as hiring a permanent replacement. Thus, the alleged inconvenience of allowing Complainant maternity leave and reinstating her does not create a business necessity justification for the "no leave" policy. Indeed, if Complainant had been reinstated, she would have returned to her job with more experience (Complainant was fully trained by Teague and had mastered about 75%-80% of the office manager duties, Finding 28) than the new replacement and would

7

probably have been more loyal to a business that treated her and her family with respect.

By extending the law to protect pregnant women, the Legislature has made a public policy decision that supports both the employment of women and childbirth. In order to prevent discrimination against pregnant women, a reasonable period of leave must be provided. To not allow leave would place the entire burden upon the woman and return to the old policies which penalized pregnant women. The Commission agrees with and adopts the conclusion of the Recommended Decision that Respondents' "no leave" policy had a disparate impact upon pregnant employees and constitutes a violation of H.R.S. § 378-2(1)(A), H.A.R. §§ 12-46-106, 107, and 108.

2.   DISPARATE TREATMENT CLAIM

H.A.R. § 12-46-106 provides: "Females shall not be penalized in their terms or conditions of employment because they require time away from work on account of disability resulting from pregnancy, childbirth, or related medical conditions."

H.A.R. § 12-46-107(b) provides: "It is an unlawful discriminatory practice to discharge a female from employment or to penalize her in terms, conditions, and privileges of employment because she requires time away from work for disability due to and resulting from pregnancy, childbirth, or related medical conditions."

H.A.R. § 12-46-108 provides:

(a) Disability due to and resulting from pregnancy, childbirth, or related medical conditions shall be

8

considered by the employer to be justification for a
leave, with or without pay, by the female employee for a
reasonable period of time. "Reasonable period of time"
as used in this section shall be determined by the
employee's physician, with regard for the employee's
physical condition and the job requirements.
. . .
(c) A female employee shall be reinstated to her
original job or to a position of comparable status and
pay, without loss of accumulated service credits and
privileges. The employer may request, prior to the
employee's return, a medical certificate from the
employee's physician attesting to her physical condition
and approving her return to work.
. . . .

The Commission rules provide that a pregnant employee
should not be penalized because of her pregnancy. The rules
specifically prohibit an employer from discharging employees who
require time away from work because of pregnancy, allow them to
take a reasonable leave of absence, with or without pay, and
require reinstatement to their original position or a position of
comparable status and pay after they can return to work. These
rules reflect the protections that must be accorded to pregnant
employees to prevent discrimination.

The record reflects that Respondents did not give
Complainant a leave of absence, terminated her, and did not
reinstate her because of her pregnancy. Findings 25, 33-35, 37-38.
Such actions were contrary to H.R.S. § 106, 107(b), and 108(a) and
(c).

Despite direct evidence that the actions were taken
because of Complainant's pregnancy, Respondents contend that they
would have discharged Complainant (as well as not provide leave or
reinstatement) because she had lied about the one year commitment

and did not reinstate her because they had already hired another permanent employee, Marnie Wolfort ("Wolfort"). When there is direct evidence of discrimination, an employer may limit, but not avoid, liability by showing a mixed motive for the adverse action. In re Smith/MTL Inc., Docket No. 92-003-PA-R-S (1994). In other words, Respondents must prove that they acted based upon the reason given and without regard to Complainant's protected basis. "[E]mployer's legitimate reason for discharge in mixed motive case will not suffice 'if that reason did not motivate it at the time of the decision.'" McKennon v. Nashville Banner Publishing Co., --- U.S.--- (January 23, 1995) (quoting from Price Waterhouse v. Hopkins, 490 U.S. 228, 260-261 (White, J., concurring, and O'Connor, J., concurring).)

The record reflects that at the time Complainant informed him about her pregnancy through the time the second replacement, Wolfort, was hired, Teague did not know whether she had lied about her ability to make a one year commitment. (Transcript Vol. VI, at 206). The letter of termination Teague sent on September 18, 1992, made no reference to lying. "[I]t is impossible to hold open your job. The learning curve for the job is simply too great." Exhibit 12. The October 26, 1992 letter, Exhibit 14, which responded to Complainant's October 23, 1992 letter seeking reinstatement, again referred to the learning curve and did not mention lying. It further stated, "I will certainly call you to determine your willingness and ability to fully perform the duties required of the office manager of Page Hawaii." Id. This indicates that the

refusal to reinstate Complainant was not because of any belief that she had lied. Subsequently on November 23, 1993, Respondents offered Complainant a position as office manager. Finding 42. This further indicates that concerns about Complainant's veracity were not significant at the time she was terminated, not given leave, and not reinstated.

Also given the Findings and Conclusion that Complainant did not lie about her ability to make a one year commitment or fail to disclose her pregnancy, the Commission concludes that her alleged lying was not a legitimate reason, much less the motivating reason, for the adverse actions. Thus, Respondents had no legal justification for the termination and failure to provide leave or reinstatement under a mixed motive analysis.

Additionally, the hiring of Wolfort does not provide any justification for not reinstating Complainant. Given the duty to reinstate an employee after a reasonable period of maternity leave, H.A.R. § 12-46-108(c), an employer cannot circumvent the law simply by hiring a permanent replacement. This would provide every employer with an easy way to discriminate against pregnant women. Indeed, the facts of the case provide added justification for not believing this reason for Respondents' failure to reinstate. After Complainant left work, Respondents hired Susan Fusari ("Fusari") as the first replacement. After working for a few weeks, Fusari gave notice of her resignation at the beginning of October 1992. Teague asked her to stay a few weeks longer to accommodate a business trip he had planned. Finding 36. At the time of Fusari's notice,

11

Complainant had indicated her desire to return to work on three occasions, the last time in late September 1992 in a telephone discussion with Teague. Finding 34. Fusari stayed through October 22, 1992. Finding 36. Complainant was cleared by her doctor to return to work on October 23, 1992. Finding 38. Thus, Respondents could have reinstated Complainant without any difficulty and complied with the law.

C.   LIABILITY

Respondents' "no leave" policy has an adverse impact upon women who are pregnant and constitutes a violation of H.R.S. § 378-2 and H.A.R. §§ 12-46-106, 107(b) and 108(a) and (c).

Respondents' termination of Complainant, refusal to grant reasonable leave, and failure to reinstate constitute a violation of H.R.S. § 378-2, H.A.R. §§ 12-46-106, 107(b), and 108(a) and (c).

D.   BACKPAY

Complainant was unemployed from October 23, 1992 through September 1993, at which time she was hired as a substitute teacher with FutureKids. Finding 43. In November 1993 she was hired as a substitute teacher with the Department of Education and began teaching in December 1993. Id. On November 22, 1993, she was offered her old position as office manager at Page Hawaii but declined. Finding 42.

The Hearings Examiner concluded that Complainant was entitled to backpay because Respondents had discriminated against Complainant by not reinstating her. The period of back pay was determined to be November 2, 1992 through January 31, 1993. The

12

terminal date was selected because Complainant could have mitigated her damages by applying for work at RAM Paging Hawaii in February 1993. The Hearings Examiner found that if Complainant had applied, she would have been hired because by RAM Paging Hawaii in February 1993 which had job openings and was looking for people with experience in the field. Recommended Decision, at 27.

The record reflects that Complainant applied for various jobs as a condition of receiving unemployment benefits and kept a list of such contacts. Exhibit 38. She applied to RAM Paging Hawaii on January 11, 1992, as well as to other telecommunications companies, such as The Cellular Source, Cheaper Beeper, and Honolulu Cellular Telephone Co. Id. The record reflects that Complainant also received letters of rejection from several companies. Exhibit 37. Not getting a rejection letter from RAM Paging Hawaii does not establish that she did not send them a resume. The Commission hereby finds that "Complainant applied to RAM Paging Hawaii, Inc., and other paging and telecommunications companies." Finding 44 is modified by adding the above-quoted sentence and deleting the second through fourth sentences of the Finding. The conclusion that Complainant could have secured a comparable job with higher pay at RAM Paging Hawaii in February 1993 is reversed.

The Commission concludes that Complainant is entitled to backpay from October 23, 1992, the day she was cleared to return to work, Finding 38, through November 23, 1993, the day that she was offered and rejected the officer manager position by Respondents.

13

Finding 42.  The amount of the monthly back pay of $1,300.00 (one thousand three hundred dollars) will be offset by the amount she earned as a part-time teacher $400.00 (four hundred dollars). Complainant is entitled to 13 (thirteen) months of back pay or $16,900.00 (sixteen thousand nine hundred dollars) less $400.00 (four hundred dollars) for a total of $16,500.00 (sixteen thousand five hundred dollars).

E.    COMPENSATORY DAMAGES

The Hearings Examiner awarded Complainant $20,000.00 (twenty thousand dollars) in compensatory damages.  Based upon the record, the Commission concludes that $5,000.00 (five thousand dollars) is a fair amount to compensate Complainant for the emotional distress she suffered from Respondents' discriminatory conduct.

F.    OTHER RELIEF

The Commission hereby adopts the Hearings Examiner's recommendations that Respondents be ordered to 1) immediately cease and desist from further discriminatory practices on the basis of sex due to pregnancy when such practices are not based upon business necessity; 2) develop a written non-discrimination policy on the basis of sex and pregnancy, submit it to the Executive Director for comment, and adopt the policy in accordance with those comments within the timeframes specified; 3) post notices provided by the Commission regarding discrimination laws in a conspicuous place on its premises; and 4) publish a notice (Attachment 1, Recommended Decision) in a newspaper in the State of Hawaii having

a general circulation in the City and County of Honolulu. The requirement of training will be modified to allow Teague to take a course in employment discrimination, including pregnancy discrimination, which is approved by the Executive Director. The written policy should be developed within thirty days of this decision regardless of the availability of training within that time.

IV.

ORDER

With the exception of the modification of Finding 44, the increase in the amount of back pay, the rejection of the conclusion that Complainant could have obtained a job with RAM Paging Hawaii in February 1993, the reduction in the amount of compensatory damages, and the modification of the training requirement, the Commission hereby incorporates in full the remainder of the Proposed Findings of Fact, Conclusions of Law and Proposed Decision.

DATED:  Honolulu, Hawaii _____ *March 3, 1995* _____

_____
Amefil Agbayani, Commissioner

_____
Jack Law, Commissioner

_____
Richard Port, Commissioner

15

CIVIL RIGHTS COMMISSION

STATE OF HAWAII

| | | |
|---|---|---|
| In the Matter of | ) | Docket No. 94-001-E-P |
| | ) | |
| YVETTE SHAW, | ) | OPINION BY COMMISSIONER |
| | ) | DAPHNE BARBEE-WOOTEN |
|    Complainant, | ) | |
| | ) | |
| - -- - - - - - - - - - -) | | |
| | ) | |
| SAM TEAGUE, LTD. dba PAGE | ) | |
| HAWAII and SAM TEAGUE, | ) | |
| | ) | |
|    Respondents. | ) | |

OPINION BY COMMISSIONER DAPHNE BARBEE-WOOTEN

I agree and concur with the Findings of Fact and Conclusions of Law that Respondents discriminated against Complainant because she was pregnant, which is a form of sex discrimination. Sec. 378-1, HRS. Our civil rights law clearly protects women from discrimination because of their pregnancy, and an employer must offer a pregnant employee her job back once she is medically able to return to work. Hawaii Administrative Rules § 12-46-108(c). However, I disagree with the Commissioners' reduction of the Hearings Examiner's award of compensatory damages from $20,000.00 to $5,000.00. I feel an amount of $15,000.00 is fair and just compensation for general damages suffered by Complainant, in addition to the other remedies awarded.

DATED: Honolulu, Hawaii ___3-3-95___

_____

Daphne Barbee-Wooten, Commissioner

16

NOTICE:   Pursuant to H.R.S. § 91-14, an aggrieved person may institute proceedings for judicial review in the circuit court within thirty days after service of the certified copy of the final decision and order of the Commission.